1  LEVINE SULLIVAN KOCH &
      SCHULZ, LLP
2  James E. Grossberg, Cal. Bar No. 169626
   jgrossberg@lskslaw.com
3  1041 Skyline Drive
   Laguna Beach, CA 92651
4  Telephone: (949) 715-3136
   Fax: (949) 715-3138

5
6  LEVINE SULLIVAN KOCH &
      SCHULZ, LLP
7  KATHERINE M. BOLGER
   (*Admitted Pro Hac Vice*)
8  RACHEL F. STROM
   (*Admitted Pro Hac Vice*)
9  kbolger@lskslaw.com
   rstrom@lskslaw.com
10 321 West 44th Street, Suite 1000
   New York, NY 10036
11 Telephone: (212) 850-6100
   Fax: (212)850-6299

12 Attorneys for Defendants Corbis
   Corporation and Reuters America LLC
13 (incorrectly sued herein as Thomson
   Reuters Holdings, Inc.)

14
               UNITED STATES DISTRICT COURT
15
       CENTRAL DISTRICT OF CALIFORNIA – SOUTHERN DIVISION
16

17 ICONIC IMAGES, LLC,                    Case No. CV-13-1951-CJC (ANx)

18              Plaintiff,                **DEFENDANTS' NOTICE OF
                                          MOTION AND PARTIAL
19        vs.                             MOTION TO DISMISS
                                          COMPLAINT; SUPPORTING
20                                        MEMORANDUM
   CORBIS CORPORATION;                    OF POINTS AND AUTHORITIES
21 THOMPSON REUTERS                       [F.R.C.P. 12(b)(6)]**
   HOLDINGS, INC.; and DOES 1-
22 10, inclusive,                         Date:    June 16, 2014
                                          Time:    1:30 p.m.
23              Defendants.               Ctrm:    9B
                                          Judge:   Hon. Cormac J. Carney
24
                                          [Declaration of Katherine M. Bolger
25                                        filed concurrently.]

26                                        Action Filed:  December 16, 2013
27
28

TO ALL PARTIES AND COUNSEL OF RECORD:

PLEASE TAKE NOTICE that on June 9, 2014, at 1:30 p.m., or as soon thereafter as counsel may be heard in the Court of the Honorable Cormac J. Carney, Courtroom 9B, located at 441 West Fourth Street, Santa Ana, CA 92701-4516 defendants Corbis Corporation and Reuters America LLC (incorrectly sued herein as Thomson Reuters Holdings, Inc.) (together "Defendants") will and hereby do move this Court for an order, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, dismissing claims two (Falsification of Copyright Management Information), three (Israel Copyright Infringement) and four (United Kingdom Copyright Infringement) from plaintiff's Second Amended Complaint.

Plaintiff Iconic Images, LLC ("Iconic") alleges that it is the copyright holder of a photograph of President Barack Obama's father, Barack Obama, Sr., which was taken sometime in the 1960s (the "Photo") by Sylvia Wells Baldwin. SAC (Bolger Dec. Ex. D) ¶¶ 7-8, 12.  It brought this lawsuit, claiming that the Defendants offered to license the Photo to third parties without the consent of Ms. Baldwin or Iconic.  *Id.* ¶ 18.  For this, it asserts a claim for copyright infringement under United States law.

Iconic also seeks to hold Defendants liable under English and Israeli copyright law, pursuant to the Berne Convention for the Protection of Literary and Artistic Works, for Defendants' worldwide distribution of the Photo.  SAC ¶¶ 52-55, 66-69.  But under well settled Ninth Circuit precedent, Iconic is not entitled to seek redress for any alleged infringement under those foreign laws because it can be made whole for any infringement under the United States Copyright Act.

Iconic also claims that Defendants "falsely list 'Obama for America/Handout' as the 'Photographer' of the Photo and falsely credit copyright ownership of the Photo to 'Obama For America/Handout/Reuters/Corbis.'"  SAC ¶ 20, Ex. D.  Based on this claim, Iconic seeks to hold Defendants liable for

Falsification of Copyright Management Information under the Digital Millennium Copyright Act, pursuant to 17 U.S.C. § 1202(a).  But Iconic has failed to allege any factual basis for its claim that at the time Defendants placed incorrect copyright management information on the Photo they did so with the "*intent* to induce, enable, facilitate, or conceal infringement," as required by 17 U.S.C. § 1202(a).

This Motion is based on this Notice; on the attached Memorandum of Points and Authorities; on the Declaration of Katherine Bolger; on all pleadings, files and records in this action; and on such other argument as may be received by the Court.

For the foregoing reasons, Defendants Corbis Corporation and Reuters America LLC respectfully request that, pursuant to Fed. R. Civ. P. 12(b)(6), this Court: (1)  dismiss the second, third and fourth claims from the Second Amended Complaint, (2) award Defendants their costs and attorney's fees, and (3) afford them such other and further relief as the Court may deem just and proper.[1]

DATED:  April 28, 2014          LEVINE SULLIVAN KOCH & SCHULZ, LLP
                                JAMES GROSSBERG
                                KATHERINE M. BOLGER*
                                RACHEL F. STROM*

                                By:   /s/ Katherine M. Bolger
                                      KATHERINE M. BOLGER

                                Attorneys for Defendants Corbis Corporation
                                and Reuters America LLC (incorrectly sued
                                herein as Thomson Reuters Holdings, Inc.)

                                *Admitted *pro hac vice*

---

[1] Before bringing this motion, counsel for the parties conferred on April 23, 2014, as required by Local Rule 7-3.

## **MEMORANDUM OF POINTS AND AUTHORITIES**

TABLE OF CONTENTS ........................................................................................ i

TABLE OF AUTHORITIES ................................................................................. ii

PRELIMINARY STATEMENT ............................................................................1

FACTUAL BACKGROUND ................................................................................2

A.    Plaintiff ......................................................................................................2

B.    Defendants .................................................................................................2

C.    The Alleged Infringement And The Untimely Copyright Registration ..........3

D.    The Complaints and the Amendment Removing Statutory Damages.............4

ARGUMENT .......................................................................................................6

ICONIC HAS PLED ONE SIMPLE CLAIM FOR COPYRIGHT
INFRINGEMENT—AND NOTHING MORE ...................................................6

I.    THIS COURT SHOULD DISMISS ICONIC'S U.K. AND
      ISRAELI COPYRIGHT CLAIMS .................................................7

II.   ICONIC HAS FAILED TO ADEQUATELY ALLEGE A
      DIGITAL MILLENNIUM COPYRIGHT ACT CLAIM ........................... 10

CONCLUSION ............................................................................... 15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Allen v. Ghoulish Gallery*,
  2007 WL 4207923 (S.D. Cal. Nov 20, 2007) ......................................................3

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ................................................................... 10, 11

*Bell Atlantic Corp. v. Twombly*,
  550 U.S. 544 (2007) .................................................... 1-2, 10, 11, 12

*City of Carlsbad v. Shah*,
  850 F. Supp. 2d 1087 (S.D. Cal. 2012) ...........................................5

*Creative Technology, LTD v. Aztech Systems PTE, LTD*,
  61 F.3d 696 (9th Cir. 1995) ............................................................. 8, 9

*DeLeon v. Wells Fargo Bank, N.A.*,
  2011 WL 311376 (N.D. Cal. Jan. 28, 2011) ................................... 11

*Estate of Elkan v. Hasbro, Inc.*,
  258 Fed. App'x 125, 2007 WL 4246149 (9th Cir. Dec. 5, 2007) .......................9

*Gilliland v. Chase Home Finance, LLC*,
  2014 WL 325318 (E.D. Cal. Jan 29, 2014) ..................................... 11

*Huber v. City of Beverly Hills, California*,
  2013 WL 1829763 (C.D. Cal. Mar. 19, 2013).................................. 11

*Kermani v. Law Office of Joe Pezzuto, LLC*,
  2014 WL 260650 (C.D. Cal Jan 23, 2014) ................................. 10, 11

*Los Angeles News Service v. Reuters Television International., Ltd.*,
  149 F.3d 987 (9th Cir. 1998) ...................................................... 7, 8

*Los Angeles News Service v. Reuters Television International Ltd.*,
  340 F.3d 926 (9th Cir. 2003) ...........................................................8

*Maiden v. Finander*,
  2013 WL 5969840 (C.D. Cal. Nov. 6, 2013)................................... 11

*Makaeff v. Trump University, LLC*,
    715 F.3d 254 (9th Cir. 2013) ...............................................................3

*McClatchey v. Associated Press*,
    2007 WL 1630261 (W.D. Pa. June 4, 2007)...................................... 14

*Millman v. Inglish*,
    461 Fed. App'x 627 (9th Cir. 2011) (unpublished) .......................... 12

*New Name, Inc. v. Walt Disney Co.*,
    2007 WL 5061697 (C.D.Cal. Dec. 3, 2007) ...................................... 10

*Parfums Givency v. C & C Beauty Sales*,
    832 F. Supp. 1378 (C.D. Cal. 1993) ....................................................5

*Saregama India Ltd. v. Young*,
    2003 WL 25769784 (C.D. Cal. Mar. 11, 2003).....................................9

*Stockart.com, LLC v. Engle*,
    2011 WL 10894610 (D. Colo. Feb. 18, 2011)................................... 14

*Stockwire Research Group, Inc. v. Lebed*,
    577 F. Supp. 2d 1262 (S.D. Fla. 2008) ............................................. 14

*Tanedo v. East Baton Rouge Parish School Board*,
    2012 WL 5447959 (C.D. Cal. Oct. 4, 2012)..................................... 11

*Update Art, Inc. v. Modiin Publishing, Ltd.*,
    843 F.2d 67 (2d Cir. 1988).................................................................8

*Warren v. Fox Family Worldwide, Inc.*,
    328 F.3d 1136 (9th Cir. 2003) ...........................................................2

*William Wade Waller Co. v. Nexstar Broadcasting, Inc.*,
    2011 WL 2648584 (E.D. Ark. July 6, 2011) .................................... 14

**Statutes**

17 U.S.C.,
    § 412.......................................................................................................6
    § 1202(a) .......................................................................................... 10, 14

## PRELIMINARY STATEMENT

Iconic Images, LLC ("Iconic") has brought a lawsuit for what amounts to a simple claim for copyright infringement over a photo that was taken of the President Barack Obama's father in the 1960s (the "Photo"). Iconic claims defendants Corbis Corporation ("Corbis") and Reuters America LLC (incorrectly sued herein as Thomson Reuters Holdings, Inc.) ("Reuters") (together, "Defendants") posted the Photo on "their" website and (without providing any specifics) licensed it to entities around the globe. Notably, however, neither Iconic nor its predecessor in interest registered the copyright in the Photo until four years *after* the alleged infringement so it is not entitled to statutory damages under U.S. law. Nonetheless, Iconic sought these damages in the original complaint and the First Amended Complaint ("FAC") and only purported to remove them *after* the meet and confer on Defendants' motion to dismiss the FAC.

Apparently eager to gin up some more money based on this simple claim, Iconic has gone too far. In a transparent attempt to do an end run around the United States Copyright Act's limit on damages, Iconic seeks to assert claims for U.K. and Israeli copyright infringement pursuant to the Berne Convention for the Protection of Literary and Artistic Works (the "Berne Convention") – based on the exact same acts that form its U.S. Copyright claim. But, the Ninth Circuit has held time and time again that the type of claim Iconic has alleged here – a straightforward claim of copyright infringement arising out of the U.S. – rises or falls on U.S. law and, consequently, the third and fourth claims must dismissed.

Iconic also seeks to hold Defendants liable for a provision of the Digital Millennium Copyright Act that prohibits using false copyright management information with the specific intent of facilitating copyright infringement because the Defendants mistakenly attributed the Photo to the Obama presidential campaign on their website. The attempt fails under *Bell Atlantic Corp. v.*

*Twombly*, 550 U.S. 544 (2007), however, because Iconic did not – and cannot – plausibly allege that Defendants intentionally attributed the Photo to the Obama Campaign knowing that it actually belonged to Iconic or Ms. Baldwin.  The claim must be dismissed.

For these reasons, Defendants ask this Court to dismiss the second, third and fourth claims in their entirety and to limit this case to the only claim that the United States Copyright Act allows Iconic to proceed on – a straightforward claim for violation of the Unites States Copyright Act without the possibility of recovering attorney's fees or statutory damages.

## FACTUAL BACKGROUND

### A.    Plaintiff

As alleged in Second Amended Complaint (the "SAC"), Iconic is a limited liability company with its principal place of business in Massachusetts.  SAC (Bolger Dec. Ex. D) ¶ 4.[1]  Iconic alleges that just two days before it filed its initial complaint in this matter, on December 14, 2013, it obtained all rights to the Photo that Sylvia Wells Baldwin took of the President's father – Barack Obama, Sr. – in Hawaii in the early 1960s.  *Id.* ¶¶ 7-9, 12; Dkt No. 1 (Bolger Dec. Ex. A).

### B.    Defendants

Defendants Corbis and Reuters are news organizations that make "use of and license[] creative content, including photographs."  SAC ¶¶ 13-17.  They are both U.S. companies, headquartered in the U.S.  *Id* ¶¶ 5-6.

---

[1] While Defendants will contest many of the allegations in the SAC, including but not limited to those allegations regarding Defendants' conduct after learning of Ms. Baldwin's claims for infringement, for the purposes of this motion to dismiss *only*, this Court must "accept all allegations of fact in the Complaint as true and construe them in the light most favorable to the plaintiff[]."  *Warren v. Fox Family Worldwide, Inc.*, 328 F.3d 1136, 1139 (9th Cir. 2003) (citations omitted).  The Court, however, is "not required to accept as true conclusory allegations which are contradicted by documents referred to in the complaint and [it does not] necessarily assume the truth of legal conclusions merely because they are cast in the form of factual allegations."  *Id.*

## C.     The Alleged Infringement And The Untimely Copyright Registration

In 2008, while President Obama was running for Office, the Obama presidential campaign published the Photo, along with many other photos of then Senator Obama's younger life, on its website, Obama for America.  SAC, Exs. D, E.  The Photo was available at the URL http://my.barackobama.com.  *See* https://web.archive.org/web/20081017054509/http://my.barackobama.com/page/content/mediaphotos_old/. [2]

In February 2008, Reuters obtained the rights to the Photo from the Obama campaign and the Defendants allegedly placed the Photo on "their website" and "offered the photo for licensed use by third parties."  SAC ¶ 19, Ex. D (Corbis website noting that the Photo was released on February 4, 2008).  In doing so, the Defendants credited the photographer of the photo as "Obama for America/Handout" and said credit should be given to "© Obama for America/Handout/Reuters/Corbis."  *Id.*, Ex. D (attaching screengrab from Corbis.com).  Although Iconic alleges that both Reuters and Corbis sold the Photo, it has only attached the Corbis website to the Complaint.

Nearly 5 years later, in December 2012, Ms. Baldwin obtained a copyright registration for the Photo.  SAC, Ex. B.  Although the Complaint acknowledges that Obama for America and Defendants first published the Photo in 2008, *see* Exhibit D, the registration notes that, according to Ms. Baldwin's knowledge, the Photo was first published in July 2011.  *Id*, Ex. B.  *See also* Ex. C (book published with the Photo and with Ms. Baldwin's permission).

In March 2013, years after Defendants made the Photo available for

---

[2]  Defendants respectfully request that this Court take judicial notice of this website, from the Wayback Machine, which contains a copy of the Photo.  *See Makaeff v. Trump Univ., LLC*, 715 F.3d 254, 259 n.2 (9th Cir. 2013) ("We grant Makaeff's requests to take notice of book collaborations between Donald Trump and Trump University, newspaper and magazine articles, *and web pages*." (emphasis added)). *See also Allen v. Ghoulish Gallery*, 2007 WL 4207923, at *3, *3 n.7, *5, *5 n.10 (S.D. Cal. Nov 20, 2007) (relying on Wayback Machine URL for evidence of a copyrighted work).

licensing, Ms. Baldwin attempted to demonstrate that she was the owner of the Photo.  SAC ¶¶ 24-26.  Nevertheless, Ms. Baldwin never actually provided Defendants with Ms. Baldwin's copyright registration (*id.* ¶ 26), and instead provided Defendants with other documents – a copy of the Photo, a thank you letter to Ms. Baldwin from Barack Obama Sr. for sending him the "photographs which we took" (without identifying those photographs in any detail) and a copy of acknowledgment and credit pages from a book by Sally Jacobs, published in 2011.

### D.      The Complaints and the Amendment Removing Statutory Damages

On December 16, 2013, Iconic filed its initial complaint in this matter, which asserted claims for U.S., U.K. and Israeli copyright infringement.  Dkt. No. 1.  Before Defendants response was due, on January 8, 2014, Iconic filed its FAC, which added an additional claim for Falsification of Copyright Management Information pursuant to 17 U.S.C. § 1202 of the Digital Millennium Copyright Act ("DCMA").  Dkt. No. 6 (Bolger Dec. Ex. B).  Notably, the original Complaint and the FAC sought statutory damages and attorney's fees for Iconic's U.S. copyright infringement claim, although, as the SAC acknowledges, the Photo was registered *years* too late to recover those fees.  Dkt. Nos. 1 and 6; SAC p. 16 n. 1.

In accordance with Local Rule 7-3, counsel for the parties conferred on March 12, 2014 to discuss Defendants' intention to file a partial motion to dismiss the FAC.

After the parties' meet and confer, on March 28, 2014, Iconic filed its SAC, which attempted to remedy some of the defects in its FAC.  Among other things, Iconic has dropped its request for statutory damages or attorney's fees for its U.S. copyright infringement claim.[3]

---

[3] Iconic does "expressly reserve[]" the right to amend the SAC to add a request for statutory damages and attorney's fees if discovery establishes that the Photo was timely registered before Ms. Baldwin registered the Photo or that

For its DCMA claim, Iconic claims that "in conjunction with the Photo publicly displayed on the Website and offered for licensing to the world, Defendants falsely list 'Obama for America/Handout' as the 'Photographer' of the Photo and falsely credit copyright ownership of the Photo to 'Obama For America/Handout/Reuters/Corbis.'" SAC ¶ 20. Iconic also claims that the Defendants kept the Photo up on the website with the incorrect copyright information after Ms. Baldwin's counsel informed Defendants that they believed Ms. Baldwin – instead of the Obama for America campaign –is the rightful owner of Photo. *Id.* ¶¶ 24-26.

Based on these claims, the Second Amended Complaint asserts four claims against Defendants: (1) copyright infringement under the U.S. Copyright Act, 17 U.S.C. § 501; (2) Falsification of Copyright Management Information pursuant to 17 U.S.C. § 1202(a); (3) pursuant to the Berne Convention, Israel Copyright Infringement, Israel Copyright Act of 2007, §§ 11, 47, 48, and 54; and (4) United Kingdom Copyright Infringement, United Kingdom Copyright, Designs and Patents Act 1988, § 96, pursuant to the Berne Convention.

For this, Iconic seeks:

(1)     *two* different permanent injunctions;

(2)     an entry of a seizure order;

---

Defendants continued to infringe the Photo after the Photo was registered. SAC p. 16 n.1. But, if someone else timely registered the Photo, that third party would be the copyright owner of the Photo and Iconic would have *no* claim here. Similarly, even if Iconic could prove that Defendants continued to license the Photo after Ms. Baldwin obtained the copyright registration, Iconic would still be unable to obtain statutory damages or attorney's fees because where, as alleged here, a pattern of infringing conduct begins prior to the effective date of the applicable registration, awards for statutory damages and attorney's fees are not available even if the allegedly infringing conduct continues after the registration is issued. *See Parfums Givency v. C & C Beauty Sales,* 832 F. Supp. 1378, 1393 (C.D. Cal. 1993) ("the first act of infringement in a series of ongoing separate infringements commences one continuing infringement under Section 412(2)."); *City of Carlsbad v. Shah*, 850 F. Supp. 2d 1087 (S.D. Cal. 2012) (same).

(3)     actual damages and disgorgement of Defendants' profits;

(4)     an accounting of Defendants' profits;

(5)     statutory damages under the DCMA;

(6)     statutory damages under the Israel Copyright Act;

(7)     costs pursuant to the U.S. Copyright Act;

(8)     costs pursuant to the DCMA;

(9)     costs pursuant to the Israel Copyright Act;

(10)    costs pursuant to the U.K. Copyright, Designs and Patent Act;

(11)    attorney's fees pursuant to the DCMA;[4]

(12)    attorney's fees pursuant to the Israel Copyright Act;

(13)    attorney's fees pursuant to the U.K. Copyright, Designs and Patent
        Act; *and*

(14)    punitive/"additional damages" for "each and every act of copyright
        infringement" under the U.K. Copyright, Designs and Patent Act.

## ARGUMENT
## ICONIC HAS PLED ONE SIMPLE CLAIM FOR
## COPYRIGHT INFRINGEMENT– AND NOTHING MORE

Three versions of the complaint later, Iconic has now conceded it is not
entitled to statutory damages or attorney's fees for its U.S. copyright claim, a fact
that should have been plain by a simple reading of the U.S. Copyright Act.  But,
Iconic has not given up on its efforts to turn this simple claim into a money maker
by creatively pleading other claims that it apparently believes have a potential for
higher dollar value recovery.  Iconic's efforts, however, are ultimately

---

[4] Iconic also requests an award of attorney's fees under the U.S. Copyright
Act, SAC p. 16 ¶ 7.  Iconic expressly concedes, however, that its copyright
registration was not timely registered, and, therefore, it is not entitled to statutory
damages or attorney's fees. *See* SAC p. 16 n.1.  Therefore, Defendants can only
conclude Iconic included this request in error. This Court should dismiss Iconic's
request for attorney's fees under the U.S. Copyright Act.  *See* 17 U.S.C. § 412.

unsuccessful and counts 2, 3 and 4 of the SAC must be dismissed.

## I.     THIS COURT SHOULD DISMISS ICONIC'S U.K. AND ISRAELI COPYRIGHT CLAIMS

In an obvious attempt to turn this simple copyright dispute into a profit maker, Iconic has attempted to circumvent the Copyright Act's limitation on extraterritorial recovery by relying on the Berne Convention (SAC ¶¶ 52-55, 66-69) to assert claims for copyright infringement under U.K. and Israeli law for the exact same facts underlying its U.S. copyright claim.  But the foreign tag-along claims must be dismissed because Iconic cannot do an end run around the limitations of U.S. Copyright law by relying on the Berne Convention.

Iconic has alleged that Defendants – U.S. based companies – copied Ms. Baldwin's Photo, put it on "their" website and offered it to third parties for license. SAC ¶¶ 17-22.  Subsequently, according to the SAC, some unidentified publications in Israel and in the U.K. allegedly licensed the Photo.  *Id*.  ¶¶ 57, 71.  Under clear Ninth Circuit precedent, what Iconic is asserting here is a U.S. Copyright claim – which limits a plaintiff's recovery to damages available under the U.S. Copyright Act – and nothing more.

For example, in *Los Angeles News Service v. Reuters Television Int'l., Ltd.*, 149 F.3d 987 (9th Cir. 1998) ("*LANS I*"),  the plaintiff, an independent news organization that produced a video on the LA riots, brought suit based on the use of their video footage on the *Today* show on NBC as well as in Europe and Africa.  In that case, NBC had a license for use of the footage in the U.S.  However, when NBC broadcast plaintiff's footage on the *Today* show to its affiliates, it simultaneously sent the footage to a joint venture in New York – Visnews, which did not have a license for the footage.  Visnews, in turn "made a videotape copy of the works as broadcast and transmitted it to subscribers in Europe and Africa."  *Id.* at 990.  It also provided copies of the videotape to the European Broadcasting Union (EBU), which in turn "transmitted it via satellite to Reuters' London branch," from where it was further

distributed.  *Id.*  Despite the ultimate foreign usages, the Court of Appeals for the Ninth Circuit concluded that Visnews had allegedly "completed acts of infringement in the United States when it copied the works in New York."  *Id.* at 991.  "It was only after these domestic acts of infringement had been completed that Visnews and EBU transmitted the works abroad."  *Id.*  Although the U.S. Copyright Act does not generally apply extraterritorially, because the initial infringing copy was made in the U.S., the plaintiff in *LANS I,* was "entitled to recover damages flowing from exploitation abroad of the domestic acts of infringement committed by defendants" under the U.S. Copyright Act.  *Id.* at 992 ("a party becomes liable for extraterritorial damages only when an act of infringement occurs within the United States, subjecting it to liability as an infringer.").  *See also Creative Tech., LTD v. Aztech Sys. PTE, LTD*, 61 F.3d 696, 702 (9th Cir. 1995) (recognizing that where item is reproduced in the United States and distributed abroad, the copyright holder can recover from the exterritorial acts of infringement under the U.S. Copyright Act) (relying on *Update Art, Inc. v. Modiin Publ'g, Ltd.*, 843 F.2d 67 (2d Cir. 1988) (allowing recovery for infringement where a poster was copied in the U.S. and published in Israeli newspapers)).

Further, the Ninth Circuit clarified that where, as in *LANS I* and here, the U.S. Copyright Act does apply to a foreign infringement, a prevailing plaintiff's damages are limited to recovery of an infringer's profits available under U.S. law.  In *Los Angeles News Service v. Reuters Television Int'l Ltd*., 340 F.3d 926, 931 (9th Cir. 2003) ("*LANS II*"), the Ninth Circuit determined that under *LANS I*, the plaintiff could recovery only the infringer's overseas profits – and not the plaintiff's actual damages.  *Id.* at 931-32.  In so holding, the Court cautioned that the *LANS I* decision was meant to "preserve[] consistency with Congress's decision to keep the copyright laws – presumably including § 504, which prescribes remedies – territorially confined."  *Id.* at 931.

Thus, under *LANS I* and *II*, even if Defendants' actions in the U.S. violated Iconic's copyright by allowing third parties in Israel and the U.K. to license the Photo, Iconic can only recover for the infringement under U.S. law.

Apparently trying to circumvent Congressional and Ninth Circuit purposeful limitation on extraterritorial recovery, Iconic resorts to the Berne Convention to attempt to hold Defendants liable under Israeli and U.K. law. SAC ¶¶ 52-55, 66-69. This it cannot do. As the Ninth Circuit itself has noted:

> Although "[b]oth the Universal Copyright Convention ... and the Berne Convention for the Protection of Literary and Artistic Works ... mandate a policy of national treatment in which copyright holders are afforded the same protection in foreign nations that those nations provide their own authors," *Creative Tech., Ltd. v. Aztech Sys. Pte., Ltd*., 61 F.3d 696, 700 (9th Cir.1995), "[a]ny rights in a work eligible for protection under [the Copyright Act] . . . *shall not be expanded or reduced* by virtue of, or in reliance upon, the provisions of the Berne Convention, or the adherence of the United States thereto," 17 U.S.C. § 104(c) (emphasis added).

*Estate of Elkan v. Hasbro, Inc.*, 258 Fed. App'x 125, 126, 2007 WL 4246149, at *1 (9th Cir. Dec. 5, 2007). Thus, a foreign "copyright cannot expand the rights [of a work] here in the United States beyond those provided by the United States copyright." *Id. See also Saregama India Ltd. v. Young*, 2003 WL 25769784, at *1 (C.D. Cal. Mar. 11, 2003) ("because Plaintiff's claim is for copyright infringement that allegedly occurred in the United States, the claim is governed by the Copyright Act," and plaintiff could not rely on Berne convention to obtain punitive damages that are not available under U.S. Copyright Act).

In this case, Iconic, a U.S. corporation, alleges that its work – the Photo – is eligible for protection under the U.S. Copyright Act. SAC ¶ 4, 10, Ex. B. It also alleges that there was a U.S. infringement, which violated the U.S. Copyright Act. *Id.* ¶¶ 17-19, 22 ("Defendants' unauthorized exploitation of the Photo violates of Iconic's exclusive rights to the Photo, as secured under the federal Copyright Act, 17 U.S.C. § 106"), 23, 33-40. And Iconic does not allege that Defendants did *anything* in Israel or the U.K. Rather it was this one U.S. act of posting the Photo on the

website that "contributed" to the infringements by other third party publications in Israel and the U.K. *Id.* ¶¶ 57, 71. Pursuant to *Elkan* and 17 U.S.C. § 104, Iconic's right to protect the Photo from infringements flowing from acts initiated in the U.S. is, therefore, limited to remedies under the U.S. Copyright Act. It cannot seek a duplicative recovery under foreign law.

At bottom, Iconic is an *American* plaintiff seeking to protect an *American* work where there was allegedly an *American* infringement. It is constrained by American law. This Court should dismiss Iconic's claims for Israeli and U.K. copyright infringement.

## II.  ICONIC HAS FAILED TO ADEQUATELY ALLEGE A DIGITAL MILLENNIUM COPYRIGHT ACT CLAIM

Additionally, Iconic has failed to adequately plead its second cause of action – a violation of the Digital Millennium Copyright Act's prohibition on false copyright management information. To succeed on this claim, Iconic must plead and prove that Defendants placed incorrect copyright management information on the Photo "with the intent to induce, enable, facilitate, or conceal infringement." 17 U.S.C. § 1202(a). Iconic's allegations here cannot withstand this 12(b)(6) motion.

"Rule 12(b)(6) is read in conjunction with Rule 8(a), which requires only a short and plain statement of the claim showing that the pleader is entitled to relief. Fed.R.Civ.P. 8(a)(2)" *Kermani v. Law Office of Joe Pezzuto, LLC*, 2014 WL 260650, at *1 (C.D. Cal Jan 23, 2014) (Carney, J.). "The purpose of Rule 8(a)(2) is to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *New Name, Inc. v. Walt Disney Co*., 2007 WL 5061697, at *1 (C.D.Cal. Dec. 3, 2007) (citing *Twombly*, 550 U.S. 544).

Under *Twombly*, in order to survive a motion to dismiss, a plaintiff is required to plead facts sufficient to establish that the claim is "plausible on its face." *Twombly*, 550 U.S. at 570; *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009) ("only a complaint that states a plausible claim for relief survives a motion to

dismiss").  And, "[w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.  "That is, [the complaint] must set forth a non-conclusory factual allegation rather than a legal conclusion.  The Court need not accept as true unreasonable inferences, unwarranted deductions of fact, or conclusory legal allegations cast in the form of factual allegations." *Maiden v. Finander*, 2013 WL 5969840, at *2 (C.D. Cal. Nov. 6, 2013).

Importantly here, the Supreme Court has specifically instructed that the plausibility requirement *includes* pleading of "malice, intent, knowledge, or other conditions of a person's mind." *Iqbal*, 556 U.S. at 686-87 ("Rule 9 merely excuses a party from pleading [malice] under an elevated pleading standard.  It does not give him license to evade the less rigid – though still operative – strictures of Rule 8"); *see also Kermani*, 2014 WL 260650, at *3 (dismissing claim where plaintiff "alleges no facts from which it can be inferred that . . . [defendant] employed deceptive means to collect the debt"); *Huber v. City of Beverly Hills, Cal*., 2013 WL 1829763, at *12 (C.D. Cal. Mar. 19, 2013) ("Plaintiff's bare allegation that Coulter 'intentionally' omitted relevant information from the official report merely repeats an element required to state a malicious prosecution claim and fails to satisfy *Iqbal*"); *Tanedo v. E. Baton Rouge Parish Sch. Bd*., 2012 WL 5447959, at *9 (C.D. Cal. Oct. 4, 2012) ("Defendant has not pleaded any facts to make plausible the claim that, at the time Plaintiffs entered into the recruiting contracts, they had no intention of honoring them . . . This is insufficient under Rule 8"); *DeLeon v. Wells Fargo Bank, N.A*., 2011 WL 311376, at *8 (N.D. Cal. Jan. 28, 2011) ("Plaintiffs must still plead facts establishing scienter with the plausibility required under Rule 8(a)"); *Gilliland v. Chase Home Fin., LLC*, 2014 WL 325318, at *6 (E.D. Cal. Jan 29, 2014) (dismissing intentional

misrepresentation claim based on conclusory allegations "because Plaintiff provides no facts from which the Court can infer intent or knowledge"). Thus, as the Ninth Circuit has made clear: "Mere conclusions of intent are insufficient." *Millman v. Inglish*, 461 Fed. App'x 627, 628 (9th Cir. 2011) (unpublished).

Here, in direct violation of *Iqbal* and *Twombly*, Iconic pleads only that at the time Defendants first offered to license the Photo they did so with incorrect information on it – namely, that the photographer of the Photo was "Obama for America/Handout" and that credit should be given to "Obama for America/Handout/Reuters/Corbis." SAC ¶ 20, Ex. D. Then, Iconic pleads Defendants did so "with the intent to induce, enable, facilitate and/or conceal copyright infringement." *Id.* ¶ 44. But this allegation is nothing more than "a formulaic recitation of the elements of [the] cause of action," which "will not do." *Twombly*, 550 U.S. at 555. Indeed, if Iconic's pleading here was sufficient, every copyright infringement claim could be turned into a DCMA violation. Iconic does not provide *any* facts to support the conclusion that this claim is different in any other way. There is nothing in the SAC, for example, from which this Court could even *infer* that the Defendants were trying to facilitate copyright infringement when they placed the incorrect information on the Photo. In fact, such a proposition is undermined by the Complaint, which makes clear the Photo was first published by the Campaign in 2008, long before Ms. Baldwin did so (SAC, Ex. B). Under these facts, it would have been impossible for Reuters and Corbis to have intentionally misrepresented copyright ownership, as at the time they published, Ms. Baldwin had not done so – only the Obama Campaign had, with no mention of Ms. Baldwin or Iconic.

Iconic does not claim, for example, that Defendants stripped off the correct copyright information from the Photo in an attempt to take credit for the Photo. In that case, it might be possible to infer the requisite intent to facilitate infringement –

it would be like Defendants said, "this photo is ours and you can take it."  But that is far from what Iconic alleged here.  Similarly, Defendants did not distribute the Photo without any copyright information, making it appear that there was no copyright owner.  And Defendants did not take sole credit for the Photo.  Instead Defendants shared the credit with the entity it believed was the source of the Photo:  "Obama for America".  It is hard to see how these actions helped to facilitate copyright infringement.  The only plausible explanation here is that, at most, Defendants made a mistake.  It is beyond pure speculation to assume Defendants *intended* to facilitate copyright infringement at the time they allegedly mislabeled the Photo.

In an attempt to save its claim, after the parties' meet and confer, Iconic added new allegations in the SAC that in March 2013 – five years after the Defendants made the Photo available with the allegedly incorrect copyright information – Ms. Baldwin's counsel informed Defendants that Ms. Baldwin was the copyright owner of the Photo.  But these new allegations cannot save the DCMA claim.

As a preliminary matter, just because Ms. Baldwin claimed she was the copyright owner does not mean that the Defendants were required to change their behavior.  Iconic concedes that Ms. Baldwin did not provide Defendants with her copyright registration.  Instead, all Ms. Baldwin provided Defendants was a copy of the Photo, a letter from Barack Obama Sr. thanking Ms. Baldwin for copies of "photographs . . . we took" and a copy of the photo credit from a book by Sally Jacobs.  SAC ¶ 25.  None of the documents Ms. Baldwin's counsel provided proved that Ms. Baldwin owned the copyright in the Photo or that the Obama for America campaign did not have the right to license the Photo to Defendants.

But even assuming that Iconic established that Ms. Baldwin was the rightful copyright owner of the Photo and that the President's campaign did not have the right to license the Photo to Defendants, Iconic still has not alleged the proper intent. Iconic claims Defendants *knew* they were leaving the Photo on their website with

incorrect copyright information; but under 17 U.S.C. § 1202(a) of the DCMA, Iconic is obliged to plead intent to facilitate copyright infringement.   In this way, this case is much like *William Wade Waller Co. v. Nexstar Broadcasting, Inc.,* 2011 WL 2648584, at *4-5 (E.D. Ark. July 6, 2011).  In *Wade*, the court found that even if the defendant there intentionally cropped a picture to remove a copyright notice, the DCMA claim still had to be dismissed because there was no showing that the defendant "did so intentionally to induce, enable, facilitate or conceal infringement." *Id.*  Similarly here, even assuming, as Iconic claims, Defendants maintained the Photo on "their" website after they knew the Photo belonged to Ms. Baldwin, Iconic has still not pled any facts to establish that they did so with the intent to facilitate copyright infringement.   The claim must be dismissed.

        In addition, informing Defendants in 2013 that Ms. Baldwin was the rightful owner of the Photo (SAC ¶¶ 24-26) cannot establish that Defendants placed false copyright information on the Photo *in 2008* (*id.*, Ex. D) with the intent to facilitate copyright infringement.   Courts have universally determined that a defendant violates 17 U.S.C. § 1202 when "'a defendant unlawfully posted an unauthorized product for distribution on the internet.'" *Stockart.com, LLC v. Engle*, 2011 WL 10894610, at *14 (D. Colo. Feb. 18, 2011) (quoting *Stockwire Research Grp., Inc. v. Lebed*, 577 F. Supp. 2d 1262, 1266–67 (S.D. Fla. 2008)).  *See also McClatchey v. Associated Press*, 2007 WL 1630261, at *6 (W.D. Pa. June 4, 2007) (Under Section 1203, "AP committed only one alleged violative act by distributing the . . . photograph to its PhotoStream subscribers, even though there were 1,147 recipients.").  Here, if Defendants violated 17 U.S.C. § 1202, they did so in 2008 when they uploaded the Photo on their website with the incorrect copyright information.  *See* SAC, Ex. D.  There is absolutely no allegation – nor could there be – that at that time, in 2008, Defendants had any reason to believe that they had put incorrect copyright information on the Photo or that the Obama for America did not

have the right to license the Photo to Defendants.  There is no allegation that
Defendants had even heard of Ms. Baldwin until 2013 – years and years after
Defendants allegedly violated the DCMA.  Thus there is absolutely no factual basis
for the allegation that Defendants intended to facilitate copyright information *at the
time* they uploaded the Photo to their website with the incorrect copyright
information.  For this reason, the DCMA claim must be dismissed.

### CONCLUSION

For all the foregoing reasons, Defendants Corbis Corporation and Reuters
America LLC respectfully request that this Court narrow this case to what is really
is – a simple U.S. copyright claim.  Defendants, therefore, respectfully request that
this Court grant its motion to dismiss the second, third and fourth causes of action
from the Second Amended Complaint, and award Defendants their costs and
attorney's fees.

DATED:  April 28, 2014

LEVINE SULLIVAN KOCH & SCHULZ, LLP
JAMES GROSSBERG
KATHERINE M. BOLGER*
RACHEL F. STROM*


By:   /s/ Katherine M. Bolger
      KATHERINE M. BOLGER

Attorneys for Defendants Corbis Corporation
and Reuters America LLC (incorrectly sued
herein as Thomson Reuters Holdings, Inc.)

*Admitted *pro hac vice*

LEVINE SULLIVAN KOCH & SCHULZ, LLP
James E. Grossberg, Cal. Bar No. 169626
jgrossberg@lskslaw.com
1041 Skyline Drive
Laguna Beach, CA  92651
Telephone: (949) 715-3136
Fax: (949) 715-3138

LEVINE SULLIVAN KOCH & SCHULZ, LLP
KATHERINE M. BOLGER *(Admitted Pro Hac Vice)*
kbolger@lskslaw.com
RACHEL F. STROM *(Admitted Pro Hac Vice)*
rstrom@lskslaw.com
321 West 44th Street, Suite 1000
New York, NY 10036
Telephone: (212) 850-6100
Fax: (212)850-6299