Peter R. Afrasiabi (Bar No. 193336)
Email: pafrasiabi@onellp.com
John Tehranian (Bar No. 211616)
Email: jtehranian@onellp.com
Dave Fagundes (Bar No. 224938)
Email: dfagundes@onellp.com
**ONE LLP**
4000 MacArthur Blvd.
East Tower, Suite 500
Newport Beach, CA 92660
Telephone:   (949) 502-2870
Facsimile:    (949) 258-5081

Attorneys for Plaintiff,
Iconic Images. LLC

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA – SOUTHERN DIVISION

| | |
|---|---|
| ICONIC IMAGES, LLC,<br><br>          Plaintiff,<br><br>v.<br><br>CORBIS CORPORATION; THOMAS REUTERS HOLDINGS, INC.; AND DOES 1-10, inclusive,<br><br>          Defendants. | Case No. CV 13-1951 CJC (ANx)<br>Hon. Cormac J. Carney<br><br>**PLAINTIFF ICONIC IMAGES, LLC's OPPOSITION TO DEFENDANTS' PARTIAL MOTION TO DISMISS COMPLAINT**<br><br>Date:   June 16, 2014<br>Time:  1:30 p.m.<br>Ctrm:  9 |

/ / /

/ / /

/ / /

13308.1

**OPPOSITION TO DEFENDANT'S MOTION TO DISMISS SECOND AND THIRD CAUSES OF ACTION TO FIRST AMENDED COMPLAINT**

# **TABLE OF CONTENTS**

I.      INTRODUCTION ............................................................................................ 1

II.     SUMMARY OF FACTS .................................................................................. 2

III.    LEGAL STANDARD ...................................................................................... 3

IV.     PLAINTIFF HAS ALLEGED FACTS SUFFICIENT TO CONSTITUTE
        CLAIMS FOR ISRAELI COPYRIGHT INFRINGEMENT AND UNITED
        KINGDOM COPYRIGHT INFRINGEMENT. ................................................ 5

        A.    The Facts Alleged by Plaintiff Establish Valid Causes of Action for
              Israeli and United Kingdom Copyright Infringement Because the
              Relevant Infringing Acts Occurred Entirely Outside the Territory of
              the United States. ................................................................................. 5

        B.    The Facts Alleged by Iconic Do Establish Extraterritorial Acts of
              Infringement, and Defendant's Misreading of Ninth Circuit Precedent
              Does Not Suggest Otherwise. ............................................................... 8

        C.    Adjudication of Extraterritorial Copyright Infringement Claims in
              Federal Court Is a Standard Practice that Lowers Litigation Costs and
              Promotes Judicial Economy ............................................................... 10

V.      PLAINTIFF HAS ALLEGED FACTS SUFFICIENT TO CONSTITUTE A
        CLAIM FOR FALSIFICATION OF COPYRIGHT MANAGEMENT
        INFORMATION. ........................................................................................... 12

        A.    The Facts Asserted in Plaintiff's Complaint Easily Exceed the Federal
              Rules' Liberal Pleading Standards ...................................................... 12

              1.    Plaintiff has more than sufficiently pled, and provided
                    supporting facts to establish, that Defendants knowingly
                    provided or distributed false copyright management
                    information. .............................................................................. 13

              2.    Plaintiff has more than sufficiently pled, and provided
                    supporting facts, to establish that Defendants intended to
                    induce, enable, facilitate and/or conceal infringement. ................ 15

        B.    Defendants' Contentions Fall Short of Showing that Plaintiff's
              Complaint Fails to State a Plausible § 1202 Claim. ........................... 18

VI.     AT THE VERY LEAST, IF THIS COURT GRANTS DEFENDANT'S
        PARTIAL MOTION TO DISMISS, LEAVE SHOULD BE GRANTED TO
        ALLOW PLAINTIFF TO AMEND ITS COMPLAINT ........................................ 25

VII.    CONCLUSION .............................................................................................. 25

**OPPOSITION TO DEFENDANT'S MOTION TO DISMISS SECOND AND THIRD CAUSES OF
ACTION TO FIRST AMENDED COMPLAINT**

1

## **TABLE OF AUTHORITIES**

2

<u>**Cases**</u>

3

*Agence France Presse v. Morel,*
   769 F. Supp. 2d 295 (S.D.N.Y. 2011) ................................................................ 18

4

*Allarcom Pay Television, Ltd. v. General Instrument Corp.,*
   69 F.3d 381 (9th Cir. 1995)......................................................................... 6, 7

5

6

*Ashcroft v. Iqbal,*
   556 U.S. 662 (2009) ......................................................... 2, 4, 5, 16

7

8

*Balistreri v. Pacifica Police Dep't,*
   901 F.2d 696 (9th Cir. 1990) ................................................................. 4

9

*Bell Atlantic Corp. v. Twombly,*
   550 U.S. 544 (2007) ...........................................................................*passim*

10

*Boosey & Hawkes Music Publishers, Ltd. v. Walt Disney Co.,*
   145 F.3d 481 (2d Cir. 1998) ............................................................ 10

11

12

*Cf. Kwan v. Schlein,*
   246 F.R.D. 447 (S.D.N.Y. 2007) ........................................................ 24

13

*Creative Technology Ltd., v. Aztech Sys. PTE, Ltd.,*
   61 F.3d 696 (9th Cir. 1995)............................................................... 11

14

15

*Derek Andrew, Inc. v. Poof Apparel Corp.,*
   528 F.3d 696 (9th Cir. 2008) ................................................................ 23

16

17

*Educational Testing Serv. v. Simon,*
   95 F. Supp. 2d 1081 (C.D. Cal. 1999) .............................................. 20

18

*Estate of Elkan v. Hasbro, Inc.,*
   258 Fed. App'x 125 (9th Cir. Dec. 5, 2007) .................................... 10

19

20

*Gilligan v. Jamco Develop. Corp.,*
   108 F.3d 246 (9th Cir. 1997) ............................................................... 3

21

22

*Huthwaite, Inc. v. Sunrise Assisted Living, Inc.,*
   261 F. Supp. 2d 502, 510 (E.D. Va. 2003) ........................................ 23

23

*Imageline, Inc. v. CafePress, Inc.,*
   2011 WL 1322525 (C.D. Cal. Apr. 6, 2011) ..................................... 16

24

25

*In re Rigel Pharmaceuticals, Inc. Secs. Litig.,*
   2010 WL 8816155 (N.D. Cal. Aug. 24, 2010).................................... 4

26

27

*In re Taleo Corp Secs. Litig.,*
   2010 WL 597987 (N.D. Cal. Feb. 17, 2010) ...................................... 4

28

13308.1

ii

*In re Wal-Mart Stores, Inc.,*
   505 F. Supp. 2d 609 (N.D. Cal. 2007) ........................................................... 24

*Kermani v. Law Office of Joe Pezzuto, LLC,*
   2014 WL 260650 (C.D. Cal. Jan. 23, 2014) ..................................................... 3

*Leveyfilm, Inc. v. Fox Sports Interactive Media, LLC,*
   2014 WL 1228404 (N.D. Ill. Mar. 25, 2014) .................................................. 17

*Logan Developers, Inc. v. Heritage Builders, Inc.,*
   2011 WL 5460757 (E.D.N.C. Sept. 30, 2013) ................................................ 17

*Los Angeles News Service v. Reuters Television Int'l, Ltd.,*
   149 F.3d 987 (9th Cir. 1998) ....................................................................... 7, 9

*Marder v. Lopez,*
   450 F.2d 445, 453 (9th Cir. 2006) ................................................................ 20

*Meredith v. Chicago Tribune Co.,*
   2014 WL 87518 (N.D. Ill. Jan. 9, 2014) .................................................. 14, 16

*Neiske v. Williams,*
   490 U.S. 319 (1989) ...................................................................................... 3

*Oddo v. Ries,*
   743 F.2d 630 (9th Cir. 1984) .................................................................. 16, 19

*Okinawa Dugong v. Gates,*
   543 F. Supp. 2d 1082 (N.D. Cal. 2008) ......................................................... 22

*Robert Stigwood Group Ltd. v. O'Reilly,*
   530 F.2d 1096 (2d Cir. 1976) ......................................................................... 9

*Russell v. Landrieu,*
   621 F.2d 1037 (9th Cir. 1980) ....................................................................... 4

*Saregama India Ltd. v. Young,*
   2003 WL 25769784 (C.D. Cal. Mar. 11, 2003) ............................................... 9

*Scheuer v. Rhodes,*
   416 U.S. 232 (1974) ...................................................................................... 4

*Schreiber Distributing Co. v. Serv-Well Furniture Co., Inc.,*
   806 F.2d 1393 (9th Cir. 1986) ..................................................................... 25

*Starr v. Baca,*
   652 F.3d 1202 (9th Cir. 2011) ....................................................................... 4

*Subafilms, Ltd. v. MGM-Pathe Communications Co.,*
   24 F.3d 1088 (9th Cir. 1994) ..................................................................... 7, 9

*United States v. Redwood City,*
  640 F.2d 963 (9th Cir. 1981) ................................................................. 3

*William Wade Waller Co. v. Nexstar Broad., Inc.,*
  2011 WL 2648584 (E.D. Ark. July 6, 2011) ...................................... 19

*X17, Inc. v. Hollywood.tv, Inc.,*
  2008 WL4627865 (C.D. Cal. 2008) ............................................. 22, 24

## **Statutes**

17 U.S.C. § 1202(a) ....................................................................... *passim*

17 U.S.C. § 1203(c) .................................................................................. 24

17 U.S.C. § 408(a) .................................................................................... 22

17 U.S.C. § 410(c) .................................................................................... 13

17 U.S.C. § 412 ......................................................................................... 24

17 U.S.C. § 501(b) .................................................................................... 22

37 C.F.R. § 202.3(c)(1) ............................................................................ 22

Fed. R. Civ. P. 12(f) ................................................................................. 21

Fed. R. Civ. P. 15(a) ................................................................................ 25

Fed. R. Civ. P. 8(a) .................................................................................... 3

## **Other Authorities**

3 Nimmer on Copyright, § 12.02[B] ....................................................... 23

4-17 Nimmer on Copyright § 17.03 ........................................................ 11

iv
**OPPOSITION TO DEFENDANTS' PARTIAL MOTION TO DISMISS SECOND AMENDED COMPLAINT**

Plaintiff Iconic Images, LLC, respectfully submits this Memorandum of Points and Authorities in support of its Opposition to Defendant's Partial Motion to Dismiss claims two, three, and four of Plaintiff's Second Amended Complaint.

## I. INTRODUCTION

Since 2008, Defendants have been exploiting for profit an iconic photograph of Barack Obama, Sr., the father of the President of the United States (the "Photograph"). By licensing uses of the Photograph worldwide, Defendants have generated lucrative royalties for themselves. Yet at no time while it was raking in these profits did Defendants ever have a legal right to do so. At all relevant times, the owner of the copyright in the Photograph was either Plaintiff or the Photograph's octogenarian author, Sylvia Wells Baldwin. Yet even after Defendants learned that their exploitation of the Photograph was wrongful, they continued to extract illicit profits by illegally licensing the Photograph both in the United States and around the globe and, on top of that, with false information about both the Photograph's author and copyright holder. Defendants have not only reaped where they have not sown, but they have engaged in a course of deceptive conduct designed to cover their tracks by misrepresenting to the public the source of the Photograph. Defendants' repeated intimations in their motion that Plaintiff is exploiting this case for profit are precisely backward. The Defendants are the illegal profiteers who have and continue to exploit intellectual property they know they do not own, denying Plaintiff the economic value of its copyright, and denying Ms. Baldwin long-overdue public recognition for her work of authorship.

Defendants have not infringed the Photograph just in the United States. They have purported to license it globally and, as part of that process, sold sham licenses for the Photograph in the United Kingdom and Israel, thereby giving plain rise to infringement liability under the copyright laws of those two countries. In addition, beyond just infringing the Photograph, they have also violated the provisions of the Digital Millennium Copyright Act prohibiting the falsification of copyright management information such as authorship and copyright ownership credits. Plaintiff's pleading of claims for infringement

1  under the laws of Israel and the United Kingdom and for falsification of copyright

2  management information under 17 U.S.C. § 1202(a) are far more than legally sufficient,

3  providing specific facts and allegations to buttress them under even the most restrictive

4  reading of *Twombly* and *Iqbal*, and nothing in Defendants' Motion to Dismiss shows

5  otherwise.

6  ## II.    SUMMARY OF FACTS

7       In the early 1960s, Sylvia Wells Baldwin took a photograph of her friend, a bright

8  young Kenyan who was studying at the nearby University of Hawai'i. Ms. Baldwin's

9  friend was Barack Obama, and her photograph became the iconic image of the father of the

10  44th President of the United States, Barack Obama, Jr. *See* Second Amended Complaint

11  ("SAC") Exh. A. In 2008, Defendants Corbis and Reuters—both international media

12  companies whose revenues depend to a large extent on their licensing of the rights to use

13  photographs—inexplicably began making available for license the Photograph on their

14  respective websites. Defendants reaped thousands, and possibly tens of thousands, of

15  dollars in licensing revenues for the Photograph.

16       Yet all the time they were earning these generous royalties, they had no legal right to

17  do so. The copyright in the Photograph remained Ms. Baldwin's, and she licensed it

18  sparingly, for example for use on the cover of the book *The Other Barack* by Sally H.

19  Jacobs. *See* SAC Exh. C. Despite their lack of any copyright interest in the Photograph and

20  their lack of any valid basis for so doing, Defendants listed—and continue to list—"Obama

21  for America/Handout" as the "Photographer" (i.e., author) of the Photograph, and falsely

22  credit its copyright ownership to "Obama for America/Handout/Reuters/Corbis. ***The***

23  ***Court should pause to consider the brashness of Defendants' outlandish claim:  Obama***

24  ***for America, an entity not formed until the 2000's, allegedly authored the iconic***

25  ***photograph of Barack Obama, Sr. from 1962—a photograph taken just after President***

26  ***Obama was born.***

27       In March 2013, Ms. Baldwin presented Defendants with evidence clearly

28  establishing her authorship, copyright ownership and registration of the Photograph. SAC

13308.1                                                    2

**OPPOSITION TO DEFENDANTS' PARTIAL MOTION TO DISMISS SECOND AMENDED COMPLAINT**

Exh. B. Yet, despite this evidence, Defendants continued to falsely attribute both the authorship and ownership of the Photograph on their respective websites. And even more galling, Defendants never paid Ms. Baldwin a cent to compensate her for their misappropriation of her intellectual property, and in fact, ***well into the instigation of this suit***, continued to offer the Photograph for licensing (while denying same in communications with counsel), in willful and wanton violation of the Copyright Act. SAC Exh. E.

In December, 2013, Ms. Baldwin assigned all her rights in the Photograph to Plaintiff. In March, 2014, Plaintiff filed its Second Amendment Complaint, alleging causes of action for copyright infringement under United States, Israeli, and United Kingdom law, as well as for falsification of copyright management information under § 1202(a) of the Digital Millennium Copyright Act.

Defendants have now brought a Partial Motion to Dismiss (the "Motion to Dismiss") the second, third, and fourth causes of action under Plaintiff's Second Amended Complaint.

## III.   LEGAL STANDARD

The liberal pleading standards of the Federal Rules of Civil Procedure remain in full force in the Ninth Circuit. Rule 8(a) requires only a "short and plain statement of the claim showing the pleader is entitled to relief." Fed. R. Civ. P. 8(a). "The issue on a motion to dismiss for failure to state a claim is not whether the claimant will ultimately prevail, but whether the claimant is entitled to offer evidence to support the claims asserted." *Kermani v. Law Office of Joe Pezzuto, LLC*, 2014 WL 260650, at *1 (C.D. Cal. Jan. 23, 2014).

Due to the liberality of these pleading standards, "[t]he motion to dismiss for failure to state a claim is viewed with disfavor and is rarely granted," *Gilligan v. Jamco Develop. Corp.*, 108 F.3d 246, 249 (9th Cir. 1997) (internal quotes omitted), only in "extraordinary" cases, *United States v. Redwood City*, 640 F.2d 963, 966 (9th Cir. 1981). In considering a motion to dismiss, the court must accept as true all material allegations in the complaint, not matter how improbable, *Neiske v. Williams*, 490 U.S. 319, 328-29 (1989), and must construe those allegations in the light most favorable to the nonmoving party, *Russell v.*

13308.1

3

1   *Landrieu*, 621 F.2d 1037, 1039 (9th Cir. 1980). Consequently, a Rule 12(b)(6) dismissal is

2   only proper where, assuming the facts as alleged are true, there is no "cognizable legal

3   theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).

4         Even after the Supreme Court's decisions in *Bell Atlantic Corp. v. Twombly* and

5   *Ashcroft v. Iqbal*, courts within the Ninth Circuit have continued to stress the traditional

6   propositions that "motions to dismiss a complaint for failure to state a claim pursuant to

7   rule 12(b)(6) are typically disfavored" and that "complaints are construed liberally to set

8   forth some basis for relief, as long as they provide basic notice to the defendants of the

9   charges against them." *In re Rigel Pharmaceuticals, Inc. Secs. Litig.*, 2010 WL 8816155,

10  *8 (N.D. Cal. Aug. 24, 2010); *accord In re Taleo Corp Secs. Litig.*, 2010 WL 597987, *5

11  (N.D. Cal. Feb. 17, 2010).  Interpreting *Twombly* and *Iqbal*, the Ninth Circuit has recently

12  emphasized that "the standard at this stage of the litigation is not that plaintiff's explanation

13  [for defendants' conduct] be true or even probable." *Starr v. Baca*, 652 F.3d 1202, 1216

14  (9th Cir. 2011). Rather, "the factual allegations of the complaint need only 'plausibly

15  suggest an entitlement to relief.'" *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 681 (2009)).

16  Thus, a well-pleaded complaint may proceed even if it appears "that a recovery is very

17  remote and unlikely." *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974).

18        Defendant's Motion to Dismiss should therefore be denied because the allegations in

19  Plaintiff's complaint provide a sound basis for relief on the causes of action for both Israeli

20  and United Kingdom copyright infringement as well as for falsification of copyright

21  management information under the Digital Millennium Copyright Act.

22  / / /

23  / / /

24  / / /

25

26

27

28

4
**OPPOSITION TO DEFENDANTS' PARTIAL MOTION TO DISMISS SECOND AMENDED COMPLAINT**

## IV.   PLAINTIFF HAS ALLEGED FACTS SUFFICIENT TO CONSTITUTE CLAIMS FOR ISRAELI COPYRIGHT INFRINGEMENT AND UNITED KINGDOM COPYRIGHT INFRINGEMENT.

### A.   The Facts Alleged by Plaintiff Establish Valid Causes of Action for Israeli and United Kingdom Copyright Infringement Because the Relevant Infringing Acts Occurred Entirely Outside the Territory of the United States.

The third and fourth causes of action asserted in Plaintiff's complaint state very straightforward claims that Defendants appear to have profoundly misunderstood: Plaintiffs aver that Defendants are liable under Israeli and United Kingdom copyright law for acts of infringement *that took place in Israel and the United Kingdom*. SAC ¶¶ 49-76. Plaintiff's complaint could not be clearer on this point. Plaintiffs pled that Defendants have violated Israeli and United Kingdom copyright law "by directly, vicariously and/or contributorily reproducing, displaying, distributing and utilizing for purposes of trade unauthorized copies and derivative versions of the photos *in Israel*," SAC ¶ 56 (emphasis added) and "*in the United Kingdom*," SAC ¶ 70 (emphasis added). These facts easily meet the requirement that a complaint must "plausibly state an entitlement to relief," *Iqbal*, 556 U.S. at 681, and thus doom Defendants' Motion to Dismiss the third and fourth claims in Plaintiff's complaint.  Indeed, Defendants cannot deny the veracity of these facts because, indeed, such activities did take place in Israel and the United Kingdom.

Plaintiff's claim—presented with particularity in its complaint but never engaged by the Defendants' Motion to Dismiss—is that Defendants' illegal exploitation of the photograph was not limited to U.S. territory, but was a global affair that included *entirely foreign* acts of infringement. Certainly some of Defendants' infringing acts were domestic and thus remediable under U.S. copyright law. SAC ¶¶ 32-40. But crucially, Plaintiff's complaint also asserts that Defendants' illicit scheme depended to a large extent on separate, foreign royalty streams flowing from extraterritorial conduct.

**OPPOSITION TO DEFENDANTS' PARTIAL MOTION TO DISMISS SECOND AMENDED COMPLAINT**

This conduct included Defendants' foreign unauthorized uses of the Photograph, such as reproductions, distributions, and displays of the Photograph that it made in Israel and the United Kingdom. SAC ¶¶ 56, 70. Defendants' foreign acts of infringement also include its provision of "sham licenses" that were proffered and executed entirely abroad, including in Israel and the United Kingdom. SAC ¶¶ 57, 71. Contrary to Defendants' repeated and mistaken assertions, the wrongful conduct for which Plaintiff seeks recovery in its third and fourth claims are not duplicative of Plaintiff's United States copyright claims, but rather represent distinct causes of action arising solely under the laws of foreign nations.

In their Motion, Defendants fail to acknowledge the plain fact that Plaintiff's third and fourth claims derive from only foreign, not domestic, acts of infringement. It is true that some of Defendants' conduct that ultimately led to acts of infringement in Israel and the United Kingdom may have been initiated in the United States, but this changes nothing. All of the infringing acts identified by the Plaintiff in claims three and four of its complaint—foreign unauthorized reproduction, distribution, and display of the Photograph, as well as proffering and executing sham licenses in foreign countries for use of the Photograph—were *completed* in either Israel or the United Kingdom. And because law regards an act of copyright infringement as occurring only in the foreign nation where it is completed, such infringement thus arises under—and only under—the laws of the foreign nation where the completed act of infringement took place.

In *Allarcom Pay Television, Ltd. v. General Instrument Corp.*, for example, the Ninth Circuit held that a U.S. company that broadcast a signal to a Canadian television station was not liable under domestic copyright law because the infringement—whether on a direct or contributory theory—did not occur until the Canadian entity received and viewed the transmission. 69 F.3d 381, 387 (9th Cir. 1995). In order to recover for the unauthorized use, the court held, the plaintiff would have had to pursue a remedy under the copyright law of Canada, where the infringing act was completed. *Id.* Similarly, here, Plaintiff has plausibly and with particularity claimed that numerous of the

**OPPOSITION TO DEFENDANTS' PARTIAL MOTION TO DISMISS SECOND AMENDED COMPLAINT**

Defendants' infringing acts occurred exclusively in Israel or the United Kingdom, unconnected to any completed domestic acts of infringement. For example, Plaintiff's contention that Defendants are liable for contributorily infringing its copyrights abroad, SAC ¶¶ 56, 70, cannot give rise to a domestic copyright claim, since courts have held that domestically authorizing an act of infringement that is completed abroad does not state a claim cognizable under federal copyright law. *Subafilms, Ltd. v. MGM-Pathe Communications Co.*, 24 F.3d 1088, 1098 (9th Cir. 1994) (en banc). United States copyright law thus cannot apply to those claims, or to any of the numerous extraterritorial infringing acts alleged in Plaintiff's complaint.

Defendants' assertions that Plaintiff's foreign copyright claims fly in the face of copyright's extraterritoriality principle thus turn the law on its head. Copyright's extraterritoriality principle in fact ***requires*** Plaintiff to look to foreign copyright law in order to be made whole for the infringing acts of the Defendants that occurred in Israel and the United Kingdom.  Indeed, if Plaintiff had tried to sue Defendants for their infringement actions in the United Kingdom and in Israel under the United States Copyright Act, they would be the first to highlight the axiomatic rule that United States copyright law does not apply to extraterritorial actions. They would, rightfully, point out that courts have barred plaintiffs from proceeding with U.S. copyright infringement suits where, as here, the predicate conduct for the foreign copyright claim did not include some "domestically completed act of infringement." *Allarcom*, 69 F.3d at 387; *see also Subafilms*, 24 F.3d at 1098 (holding that the mere authorization of extraterritorial infringement is not a completed act of infringement over which United States courts could exercise jurisdiction). In fact, that is exactly what one of the Defendants here, Reuters, sought to do in the very case on which they rely most extensively in their Motion—*Los Angeles News Service v. Reuters Television Int'l, Ltd.*, 149 F.3d 987 (9th Cir. 1998) ("*LANS*"). If Plaintiff had claimed that the infringements of the Photograph taking place in Israel and the United Kingdom created liability under

7

**OPPOSITION TO DEFENDANTS' PARTIAL MOTION TO DISMISS SECOND AMENDED COMPLAINT**

American law, Reuters would be moving to dismiss the American law claim here—just as they tried to do in *LANS*.  Defendants simply cannot have it both ways.

Thus to be fully compensated for the Defendants' ongoing global scheme of infringement, Plaintiffs not only may, ***but must***, pursue remedies under the laws of the foreign countries where the extraterritorial acts comprising that illicit scheme occurred. And Plaintiff has done just that with its Complaint.

**B.     The Facts Alleged by Iconic Do Establish Extraterritorial Acts of Infringement, and Defendant's Misreading of Ninth Circuit Precedent Does Not Suggest Otherwise.**

Ironically, the grand rhetorical flourish with which Defendants conclude the first part of their Motion to Dismiss perfectly frames the reason why their Motion must fail. Defendants argue that "Iconic is an *American* plaintiff seeking to protect an *American* work where there was allegedly an *American* infringement. It is constrained by *American* law." Defs.' Motion at 10. This statement is meaningful not for what it says, but for what it omits. Certainly Iconic is an American company, and part of Defendants' illegal conduct includes domestic acts of infringement actionable under the United States Copyright Act. But it does not follow that there were not (or could not be) infringements under foreign law as well.  Indeed, there were:  Defendants committed specific acts of infringement in the United Kingdom and in Israel. And Iconic, like any other American company with American works (*e.g.*, Walt Disney, Capitol Records, or Time Warner), enjoys protection in foreign countries for infringement that violates the laws of foreign countries. Defendants err by misunderstanding that Plaintiff's complaint concerned *only* domestic acts of infringement, when in fact claims three and four were based on separate acts of infringement that are extraterritorial in nature, as specifically pled in the Complaint. SAC ¶¶ 56-58, 70-72.

This basic misunderstanding also highlights the reason that all of the authorities cited by Defendant are inapposite: They all concern only acts of infringement that began and were completed within the territory of the United States, and that only thereafter led

**OPPOSITION TO DEFENDANTS' PARTIAL MOTION TO DISMISS SECOND AMENDED COMPLAINT**

to infringing acts in foreign countries. Not one of them concerns a case where, as here, a plaintiff brought foreign causes of action *for acts of infringement that occurred entirely extraterritorially*. *LANS*, on which Defendants rely most heavily, concerned not acts of infringement completed abroad, but rather ones that were based on "completed acts of infringement in the United States"—specifically, domestic reproductions of works that were then distributed in foreign countries. 149 F.3d at 991. *LANS* is thus not only inapposite to Defendants' claim, but as explained earlier, it actually provides affirmative support as to why the motion to dismiss Plaintiff's foreign law infringement claims cannot survive.  To wit, in *LANS*, the Ninth Circuit held that plaintiffs could recover damages for unauthorized uses occurring abroad only if that infringement was inextricably tied to some "predicate act of infringement occurring in the United States." *Id.* at 992. Here, by sharp contrast, Plaintiff's Israeli and United Kingdom infringements operate independently of its claims under the Copyright Act. On information and belief, Defendants directly infringed Plaintiff's copyrights by reproducing, displaying, and distributing the work without permission entirely "in Israel" and "in the United Kingdom." SAC ¶¶ 56, 70. And Plaintiff's assertion that Defendants contributorily infringed by offering "sham licenses" abroad, SAC ¶¶ 57, 71, is similarly unconnected to any predicate domestic act of infringement. The mere domestic approval of infringing conduct that occurs abroad does not fall within the purview of U.S. law and may be remedied only under foreign copyright acts. *Subafilms*, 24 F.3d at 1098; *see also Robert Stigwood Group Ltd. v. O'Reilly*, 530 F.2d 1096, 1101 (2d Cir. 1976) (holding that no damages could be obtained under the Copyright Act for public performances in Canada when preliminary steps were taken within the United States and stating that "[t]he Canadian performances, while they may have been torts in Canada, were not torts here").

Defendants' citation to *Saregama India Ltd. v. Young* is thus also irrelevant because, like *LANS*, it concerns only "copyright infringement that … occurred in the United States." 2003 WL 25769784 (C.D. Cal. Mar. 11, 2003). And equally inapposite

13308.1

9

is Defendants' citation to the admonition in *Estate of Elkan v. Hasbro, Inc.* that "[a]ny rights in a work eligible for protection under [the Copyright Act] … shall not be expanded or reduced by virtue of or in reliance on … the Berne Convention." 258 Fed. App'x 125 (9th Cir. Dec. 5, 2007) (unpublished opinion). Plaintiff does not seek any extra rights under United States copyright law in counts three and four of its complaint. Rather, Plaintiff seeks only to enforce its foreign copyrights that have been infringed by separate, foreign acts committed and/or enabled by Defendants.

In order to overcome Defendants' Motion to Dismiss its foreign copyright claims, Plaintiff need only raise a "plausible" inference that Defendants committed fully extraterritorial infringing acts. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007). The particularity with which Plantiff has alleged both direct and contributory infringing acts that Defendants committed independently of any domestic act of infringement easily meets this liberal standard.

## C.   Adjudication of Extraterritorial Copyright Infringement Claims in Federal Court Is a Standard Practice that Lowers Litigation Costs and Promotes Judicial Economy.

Defendants wrongly suggest that Plaintiff's Israeli and United Kingdom copyright claims amount to nothing more than a contrived attempt to "circumvent the Copyright Act's limit on extraterritorial recovery by relying on the Berne Convention." Defs.' Motion at 7. But the regularity with which federal courts entertain copyright infringement claims arising under the laws of foreign nations shows that this practice is far from a contrivance, but a standard and efficient means of enforcing copyright owners' international interests. In *Boosey & Hawkes Music Publishers, Ltd. v. Walt Disney Co.*, 145 F.3d 481 (2d Cir. 1998), for example, the Second Circuit reinstated claims of copyright infringement under the laws of at least eighteen different foreign countries in a federal district court suit against an American corporation.  *Id.* at 491-92. The Ninth Circuit has also explicitly acknowledged the viability of entertaining actions under the copyright laws of foreign nations. *Creative Technology Ltd., v. Aztech Sys.*

10

*PTE, Ltd.*, 61 F.3d 696, 702 (9th Cir. 1995) ("This Court has recognized the potential of American courts to entertain actions under the copyright laws of other nations."). The author of the leading treatise on U.S. copyright law concurs. David Nimmer, 4-17 *Nimmer on Copyright* § 17.03 ("If the plaintiff has a valid cause of action under the copyright laws of a foreign country, and if personal jurisdiction of the defendant can be obtained in an American court, it is arguable that an action may be brought in such court for infringement of a foreign copyright law.").

In order to maximize judicial economy (especially when the parties to the infringements are both American companies), federal courts routinely hear claims for infringement of foreign copyright law—often in conjunction with infringement under American law.  Defendants' worldwide copyright infringement scheme has included unlawful acts in numerous foreign countries, including Israel and the United Kingdom. United States courts are clearly competent to hear the separately arising foreign causes of action that Plaintiff pled alongside its domestic claims. Adjudicating these territorially separate causes of action in this single case is not only permissible, but strongly advisable for the parties and the judicial system alike.

Of course, Plaintiff could bring these foreign law claims in separate actions in the United Kingdom and in Israel.  But, such a massive global adventure litigating this dispute in three different countries in three continents serves no one except, perhaps, the lawyers in this case.  It would simply lead to the unnecessary expenditure of resources by the parties, the superfluous taxation of the court systems of three different countries, and massive inefficiencies.  The parties are all present here in the United States and the core issues involving the infringements are identical.  And damages for violations will all be paid by entities here; after all, if Iconic receives a Judgment in an Israel court, it likely will have to still tax the American court system to perfect that Judgment here (where Defendants indisputably have assets).  Hearing the infringement claims in tandem before this Court will prevent this case from becoming an unnecessarily costly

11

**OPPOSITION TO DEFENDANTS' PARTIAL MOTION TO DISMISS SECOND AMENDED COMPLAINT**

affair and will permit quick and efficient resolution of all parties' concerns in a single forum.

## V. PLAINTIFF HAS ALLEGED FACTS SUFFICIENT TO CONSTITUTE A CLAIM FOR FALSIFICATION OF COPYRIGHT MANAGEMENT INFORMATION.

### A. The Facts Asserted in Plaintiff's Complaint Easily Exceed the Federal Rules' Liberal Pleading Standards.

Plaintiff's theory of this case has never wavered: It asserts in its complaint that Defendants exploited the Photograph with full knowledge that they had no right to do so, beginning in 2008 and continuing to the present day, even though Plaintiff presented them in 2013 with conclusive evidence undermining any argument that they have any copyright interest in the Photograph. Plaintiffs assert, and believe they can prove, that to further this illegal scheme, Defendants misrepresented the true author and owner of the Photograph—including a blatantly false assertion that they themselves co-owned the copyright—in order to conceal the work's true origins and to avoid having suspicions about its dubious provenance that would interrupt the lucrative royalty stream the Photograph created for Defendants. This is a textbook case of falsification of copyright management information (CMI), violating 17 U.S.C. § 1202(a), and one that is amply supported throughout the Plaintiff's complaint. In order to defeat Defendants' Motion to Dismiss, Plaintiff need only show that it has pled non-conclusory facts that render this claim for relief plausible. Plaintiff's complaint not only meets, but well exceeds, this liberal standard.

Defendants do not contest—as, indeed, they cannot—that they have provided false CMI. 17 U.S.C. § 1202(a) (prohibiting the provision of "copyright management information that is false"). Plaintiff actually identifies not one, but two specific instances of Defendants' falsifying CMI: They wrongly listed "Obama for America/Handout" as the "Photographer" (i.e., author) of the Photograph, and inaccurately credited copyright ownership of the Photograph to "Obama for America/Handout/Reuters/Corbis." SAC ¶ 43; Exhs. D, E. Defendants appear to contest Plaintiff's assertion that they provided this

13308.1

12

**OPPOSITION TO DEFENDANTS' PARTIAL MOTION TO DISMISS SECOND AMENDED COMPLAINT**

inaccurate ownership and authorship with full knowledge that these ownership credits were false. 17 U.S.C. § 1202(a). Defendants also challenge the sufficiency of Plaintiff's assertion that their provision of false CMI was made "with the intent to induce, enable, facilitate or conceal infringement." *Id.*

> **1.** *Plaintiff has more than sufficiently pled, and provided supporting facts to establish, that Defendants knowingly provided or distributed false copyright management information.*

In terms of the knowledge requirement of § 1202(a), Plaintiff clearly pled that Defendants placed false ownership and authorship credits alongside the Photograph "despite full knowledge that [these credits] are false." SAC ¶ 43. The manifest plausibility of this assertion is simple to prove. Plaintiffs own the copyright in the Photograph. Defendants do not, and never have, had any copyright interest in the Photograph. Plaintiffs have a valid copyright assignment from Ms. Baldwin, who in turn has a valid copyright registration certificate listing her as the Photograph's author. SAC Exh. B.  Indeed, because Ms. Baldwin's registration for the Photograph was made within five years of its publication, it enjoys a legal presumption of the validity of the copyright and "of the facts stated in the certificate," including its assertions regarding authorship and copyright ownership. 17 U.S.C. § 410(c).  As such, Ms. Baldwin enjoyed a legal presumption that she is the author of the Photograph.  Defendants' failure to so acknowledge her, and their decidedly willful refusal to do so in the face of numerous facts and a legal presumption of authorship, provides more than an adequate basis for stating a claim for relief under § 1202(a).

Defendants assert the competing explanation that their inclusion of false CMI was merely an innocent mistake. Defs.' Motion at 13. But this "innocent mistake" story strains all credulity to such an extent that it renders Plaintiff's claim that Defendants did have full knowledge of the CMI's falsity all the more plausible by comparison. As Plaintiff explained in its Complaint, Defendants are sophisticated commercial entities whose very business is to make money from licensing uses of copyrighted works of authorship. SAC ¶¶

**OPPOSITION TO DEFENDANTS' PARTIAL MOTION TO DISMISS SECOND AMENDED COMPLAINT**

13-16, 18. Their commercial sophistication and highly specialized understanding of copyright law render absurd Defendants' suggestion that their falsification of the Photograph's CMI was a mere oversight.

The obvious inaccuracy of Defendants' false CMI also makes it hard to take the "innocent mistake" theory seriously. The Photograph in question was taken in the early 1960s and features a man who died in 1982. ***How could its author possibly have been "Obama for America," an organization that was not founded until the early 2000s? And why didn't sophisticated media companies like Defendants investigate such a blatant red flag?*** Yet despite these basic facts, Defendants publicly asserted that they and Obama for America had rights to a work they had to know they did not. SAC ¶ 20, Exhs. D, E; *see Meredith v. Chicago Tribune Co.*, 2014 WL 87518, *2 (N.D. Ill. Jan. 9, 2014) (plaintiff's uncontested assertion that he owned the copyright in a photograph necessarily raised a plausible inference that defendant knew it did not own that copyright). The manifest dubiousness of Defendants' "innocent mistake" story shows that Plaintiff's theory that Defendants presented inaccurate CMI with the full knowledge of its falsity is not only plausible enough to meet the relevant pleading standards, but is easily the *most* plausible reading of the facts averred in the Complaint.

***More clear-cut, however, is the following fact that renders superfluous the entire discussion above and makes Defendants' knowing falsification of copyright management information not just plausible but indisputable: Defendants continued to provide false CMI for the Photograph in order to continue to (sham) license it for profit even after Ms. Baldwin presented them with overwhelming evidence of her ownership of it in early 2013.*** In fact, more than six months into this litigation, Defendants continued to provide such false copyright infringement on their website, as evidenced by Exhibit E to the Second Amended Complaint. In fact, when counsel approached Defendants about this clear discrepancy between the facts (*i.e.*, the continued infringement and provision of false copyright management information evidenced by Exhibit E) and their representations (*i.e.*, that they had taken down the Photograph from their website more than a year ago),

14

**OPPOSITION TO DEFENDANTS' PARTIAL MOTION TO DISMISS SECOND AMENDED COMPLAINT**

Defendants dissembled again, claiming the web page featuring the photograph was not publicly accessible and that the page did not constitute an offer to license (but just served as a page for internal use).  However, the page was publicly accessible, as evidenced by the fact that Plaintiff's counsel found it through a simple Google search and attached it to the SAC as Exhibit E. And it was an absolute offer to license. The plain language on the web page made this clear. Just as importantly, the public offer to license the Photograph came with falsified copyright management information still appended. *See* SAC Exhs. D, E (falsely listing "Obama For America/Handout" as the Photograph's author, falsely listing itself as the Photograph's co-owner, and stating that the "[i]mage [is] available for editorial use, pre-approval required for all other uses," all on a web page visited and watermarked March 12, 2014).

All told, even if one buys the wildly implausible "innocent mistake" theory espoused by Defendants for their uses dating from 2008, such a claim becomes impossible after they received overwhelming evidence of Ms. Baldwin's authorship of and copyright ownership in the Photograph in early 2013.

> **2.** *Plaintiff has more than sufficiently pled, and provided supporting facts, to establish that Defendants intended to induce, enable, facilitate and/or conceal infringement.*

Plaintiffs have also clearly pled that Defendants provided false CMI "with the intent to induce, enable, facilitate and/or conceal infringement." SAC ¶ 44. Despite the Defendants' insistence to the contrary, Plaintiff's complaint also amply supports the plausibility of this claim. The suspiciousness of Defendants' falsification of CMI, followed by their aggressively seeking to extract maximum licensing value from the Photograph, raises a plausible inference that Defendants mislabeled the credits on the Photograph in order to intentionally conceal its true provenance.

The Photograph represents one of very few existing images of President Obama's father during his time in Hawaii, and soon became a much sought-after, iconic image during President Obama's rise to the presidency in 2008. Defendants are sophisticated

13308.1

15

**OPPOSITION TO DEFENDANTS' PARTIAL MOTION TO DISMISS SECOND AMENDED COMPLAINT**

parties who understood well both how much they stood to gain financially from licensing the Photograph, and how damaging it would have been to their licensing efforts if questions emerged about the validity of their copyright interest in it. It is thus manifestly plausible that Defendants provided false CMI to deflect any suspicion about the legality of their licensing the Photograph, in order to make sure they could earn as much profit from it as possible. Indeed, by listing themselves as co-owners of the copyright, they globally communicated their legal right to license uses of the Photograph. *See Oddo v. Ries*, 743 F.2d 630, 633 (9th Cir. 1984) ("[E]ach co-owner has an independent right to use or license the use of the copyright.").

The factual assertions that a defendant has falsified CMI on a copyrighted image and then seeks to profit from that image is so suspicious that they alone raise a plausible inference that a defendant has done so in order to conceal infringement. As a result, courts routinely reject motions to dismiss claims for falsification of CMI under § 1202(a) so long as plaintiffs simply state in their complaints that the defendant placed false CMI on their work, and where the defendant has proceeded to exploit the work commercially. In *Imageline, Inc. v. CafePress, Inc.*, 2011 WL 1322525 (C.D. Cal. Apr. 6, 2011), for example, the U.S. District Court for the Central District of California rejected CafePress's 12(b)(6) motion to dismiss Imageline's complaint that CafePress had violated § 1202(a) by representing that Imageline's copyrighted work of authorship actually belonged to CafePress. The court, applying the *Twombly* and *Iqbal* pleading standards, found it sufficient that Imageline's complaint alleged both that (1) CafePress had placed false CMI on an image owned by Imageline, and that (2) CafePress had done so with intent to, inter alia, conceal infringement. *Id.* at *5.

Numerous other district courts have rejected motions to dismiss pleadings for violations of § 1202(a) where, as here, the plaintiff pleads that a defendant falsified CMI and the defendant sought to profit from the misrepresented work. *E.g.*, *Meredith*, 2014 WL 87518 at *2 (rejecting a motion to dismiss § 1202(a) claim where plaintiff pled that defendant knowingly represented itself, not defendant, as the copyright owner of news

photographs it displayed on the internet); *Leveyfilm, Inc. v. Fox Sports Interactive Media, LLC*, 2014 WL 1228404, *4 (N.D. Ill. Mar. 25, 2014) (plaintiff's pleading that defendant misrepresented CMI in connection with a work that it displayed on the internet was sufficient to create a the inference that plaintiff's § 1202(a) claim was plausible); *Logan Developers, Inc. v. Heritage Builders, Inc.*, 2011 WL 5460757, *8 (E.D.N.C. Sept. 30, 2013) (rejecting motion to dismiss § 1202(a) claim where plaintiff pled that defendant placed false CMI on two of plaintiff's works and then sought to license those works over the internet). All of these cases held that it is plausible to assume that the defendants' falsification of CMI was designed to conceal the illegality of their attempts to profit off of their infringement. So too, here, it is plausible to infer that Defendants' false claim that they co-owned the Photograph likely represented an attempt to mislead potential licensees into wrongly believing that Defendants were legal licensors of the Photograph.

The facts surrounding Defendant's initial misrepresentation of CMI in 2008 would be more than sufficient to plead a § 1202(a) claim. But Defendants' subsequent course of action at the onset of this dispute last year provides even more evidence of the strong plausibility of Plaintiff's assertions that Defendant falsified CMI with the intent to conceal copyright infringement. In March, 2013, Plaintiff's predecessor-in-interest in the Photograph, Ms. Baldwin, approached Defendants with incontrovertible evidence of her authorship of the Photograph. As explained with particularity in Plaintiff's pleading, Defendants not only refused to share with Ms. Baldwin any of the proceeds they had gained from their unauthorized use of her work, but they continued to hold themselves out as rights holders of the Photograph and to reap illegal profits from their licensure of it (all despite explicit promises that they would cease and desist using the Photograph). SAC ¶¶ 24-29. The implication of Defendants' recent conduct is plain, and certainly sufficient to raise a plausible § 1202(a) claim: Defendants' misrepresentation of CMI was done with full knowledge of its falsity, and as part of a conscious scheme that would assure its continued illegal profiteering by wrongly representing itself, not the true owners, as the legal licensor of the Photograph. SAC ¶ 28.

13308.1

17

**OPPOSITION TO DEFENDANTS' PARTIAL MOTION TO DISMISS SECOND AMENDED COMPLAINT**

1      Where, as here, parties have continued to falsify CMI and exploit a work for profit

2  after a work's true owner makes himself known, courts have rightly held that such facts

3  state a particularly strong claim for a violation of § 1202(a). Consider, for example, *Agence*

4  *France Presse v. Morel*, 769 F. Supp. 2d 295 (S.D.N.Y. 2011), a case with highly similar

5  facts to those asserted in Plaintiff's complaint. In *Agence France Presse*, the plaintiff stated

6  in his complaint that the defendant had (1) published his photographs with an inaccurate

7  credit to another photographer, and (2) continued to use and license the photographs with

8  false CMI even after the plaintiff apprized defendants of their mistake. *Id.* at 304-05. The

9  district court denied the defendant's motion to dismiss the plaintiff's § 1202(a) claim,

10  finding that these two facts readily suggested that the defendant had intentionally

11  misrepresented the photograph's CMI—especially after the plaintiff's notice of the CMI's

12  falsity—in order to continue reaping licensing profits. *Id.* at 305. That court held, as this

13  court should, that such "allegations sufficiently plead knowledge and intent." *Id.*

14      **B.**    **Defendants' Contentions Fall Short of Showing that Plaintiff's Complaint**

15      **Fails to State a Plausible § 1202 Claim.**

16      Defendants' argument that Plaintiff has failed to state a plausible § 1202(a) claim

17  turns largely on its conclusory assertion that Plaintiff has done nothing more than "recite

18  the elements of [the] cause of action." Defs.' Motion at 12. This misreading of Plaintiff's

19  complaint is belied by the extensive citations to the complaint and to relevant case law,

20  *supra*, all of which show that Plaintiff has stated facts on its § 1202(a) claim with more

21  than enough particularity to "nudge their claim[] across the line from conceivable to

22  plausible." *Twombly*, 550 U.S. at 570. Nor do Defendants mention, or even cite, the

23  extensive case law cited herein regarding the standards for pleading § 1201(a) claims—

24  likely because all of those cases strongly favor the denial of Defendants' motion. Indeed,

25  not one of the cases cited by Defendants to support its argument that Plaintiff's pleadings

26  are insufficient even relate to DMCA § 1202; instead, they pertain to wholly unrelated

27  areas of law such as malicious prosecution, debt collection, and misrepresentation. Defs.'

28  Motion at 11-12. In fairness to Defendants, they do cite one case germane to § 1202,

**OPPOSITION TO DEFENDANTS' PARTIAL MOTION TO DISMISS SECOND AMENDED COMPLAINT**

1    *William Wade Waller Co. v. Nexstar Broad., Inc.*, 2011 WL 2648584 (E.D. Ark. July 6,

2    2011), but this authority too is egregiously off-point. *Nexstar* addressed a motion for

3    summary judgment (not, as here, a 12(b)(6) motion to dismiss), and concerned a claim for

4    removal of CMI under § 1202(b) (not, as here, falsification of CMI under § 1202(a).[1] *Id.* at

5    *4-5.

6          Other points raised by Defendants fly in the face of cornerstone provisions of

7    copyright law. Defendants puzzlingly assert that "if Iconic's pleading here was sufficient,

8    every copyright infringement claim could be turned into a DMCA violation." Defs.'

9    Motion at 12. This argument seems to misunderstand both copyright infringement and §

10   1202(a). Defendants' unauthorized use of Plaintiff's work of authorship alone infringed

11   Plaintiff's copyright. Separately, Defendants' inclusion of false CMI violated § 1202(a).

12   These two causes of action operate independently. The vast majority of unauthorized uses

13   of copyrighted works of authorship do not include falsified CMI, and Plaintiff's

14   straightforward § 1202(a) claim changes nothing about that. Defendants also insist that "[i]t

15   is hard to see how" their falsification of CMI, such as "sharing the credit" with Obama for

16   America "helped to facilitate copyright infringement." *Id.* at 13. This assertion appears to

17   misapprehend basic concepts of copyright ownership. By falsely listing themselves as co-

18   authors of a work they knew they did not own, Defendants wrongfully represented

19   themselves as valid licensors of the Photograph, since all co-owners of a copyright are

20   entitled to license it. *Oddo*, 643 F.2d at 633. Thus, contrary to Defendants' assertion that

21   they did not publicly express that "this photo is ours and you can take it," Defs.' Motion at

22   13, by publicly stating that they were a co-owner of the copyright in the Photograph, that is

23   *exactly* what they communicated to the world—with the caveat, of course, that people

24   could only "take" the Photograph once they paid Defendants a handsome license fee.

25

26   _____

27   [1] Defendants appear to misunderstand the crucial difference between § 1202(a) and § 1202(b)
     elsewhere in their Motion to Dismiss. They observe, for example, that "Iconic does not claim …
     that Defendants stripped off the correct copyright information from the Photo." Defs.' Motion at

28   12. This is indubitably true. Those facts would constitute a violation of § 1202(b) for *removal* of
     CMI, while Plaintiff asserts in its complaint only a violation of § 1202(a) for *falsification* of CMI.

**OPPOSITION TO DEFENDANTS' PARTIAL MOTION TO DISMISS SECOND AMENDED**
**COMPLAINT**

Defendants' final argument is that because they were unaware of Ms. Baldwin's copyright interest in the Photograph at the time that they originally posted it in 2008, they cannot be held liable for falsification of CMI under § 1202(a). This argument, too, suffers from several fatal flaws. First, as explained in detail above, Plaintiff's § 1202(a) claim does not depend solely on Defendants' conduct following its interactions with Ms. Baldwin in March, 2013. The complaint pleads facts that plausibly raise the inference that Defendants' initial falsification of CMI on the Photograph in 2008 was done in order to deceive the public into wrongly thinking that Defendants had the right to license the Photograph. Defendants appear to argue that because they did not know at that time that the copyright owner of the Photograph was Ms. Baldwin, they could not have acted with intent to infringe. But this wrongly assumes that, in order to infringe, a defendant must know who the copyright owner is of the work they are using without authorization. This is simply wrong. Copyright infringement "is a strict liability tort." *Educational Testing Serv. v. Simon*, 95 F. Supp. 2d 1081, 1087 (C.D. Cal. 1999). It requires only a validly copyrighted work of authorship and an infringing act of the defendant. *Marder v. Lopez*, 450 F.2d 445, 453 (9th Cir. 2006). That Defendants knew—as they must have upon initially posting the Photograph in 2008—that they were not co-owners of the Photograph but falsely represented themselves as such to the public for purposes of reaping illegal licensing revenues raises a plausible inference that their falsification of CMI took place with the intent to conceal infringement (regardless of against whom), and these facts thus suffice to state a valid § 1202(a) claim.

And even if there were any merit to Defendants' argument that a § 1202(a) claim did not ripen until they became aware of Ms. Baldwin's copyright interest in 2013, their motion should still be denied. That would mean only that their falsification of CMI began in 2013, rather than 2008. Defendants attempt to evade this conclusion by citing cases holding that the act of posting a CMI-falsified work online triggers liability under § 1202(a), but this commonplace proposition is beside the point. Even if it were true that the Defendants were unaware of their infringement and the falsity of the Photograph's CMI until March 2013,

13308.1

20

they took no action to remedy those wrongs when presented with unequivocal evidence of Ms. Baldwin's copyright ownership, SAC Exh. B, and have in fact continued to both attempt to extract licensing revenue from and to hold themselves out as co-owners of a work in for which they know they do not hold a valid copyright, SAC ¶ 29. So even if one were to credit Defendants' dubious assertion that they did not violate § 1202(a) when they initially posted the Photograph in 2008, they certainly violated § 1202(a) when they continued to display and license the photograph with blatantly false CMI since Ms. Baldwin's disclosures in early 2013. SAC Exhs. D, E.

## VI. DEFENDANTS' BURIED ARGUMENTS—THAT PLAINTIFF IS NOT ENTITLED TO THE FULL RELIEF IT SEEKS—ARE BOTH PROCEDURALLY IMPROPER AND SUBSTANTIVELY UNCONVINCING.

Disguised at the margins of their motion, Defendants advance two surreptitious arguments contesting Plaintiff's entitlement to certain relief it has sought. Specifically, in a pair of footnotes to the "Factual Background" section of Defendants' motion, they assert that the timing and form of the Photograph's copyright registration bar its ability to recover both statutory damages and attorney's fees. Defs.' Motion at 4-5 n.3, 6 n.4. These arguments are as infirm procedurally as they are misguided substantively.

This court should ignore Defendants' remedies arguments regardless of their substance because they are procedurally improper. Defendants are clearly trying to surreptitiously smuggle into their Rule 12(b)(6) motion about the legal sufficiency of Plaintiff's claims a wholly different argument about the availability of particular remedies. They have chosen the wrong procedural vehicle to do so. If Defendants truly do want to challenge the availability of certain remedies in this case, they should make a motion to strike "immaterial … matter." Fed. R. Civ. P. 12(f). Rule 12(f) motions allow defendants to argue that certain elements of a pleading—such as unavailable remedies—are unnecessary or irrelevant, while Rule 12(b)(6) motions, by contrast, challenge the sufficiency of the substantive causes of action averred by plaintiffs. Courts within the Ninth Circuit have thus considered defendants' objections to remedies in copyright cases only if presented in the

**OPPOSITION TO DEFENDANTS' PARTIAL MOTION TO DISMISS SECOND AMENDED COMPLAINT**

context of a Rule 12(f) motion to strike. *E.g.*, *X17, Inc. v. Hollywood.tv, Inc.*, 2008 WL4627865, *2-3 (C.D. Cal. 2008) (considering, and denying, defendant's motion to strike damages that was brought separately from the defendant's motion to dismiss for failure to state a claim).

This is an argument about fairness, not just formalities. By squirreling away arguments about unavailable remedies in the footnotes of their Motion to Dismiss, Defendants have rendered it unclear to both Plaintiff and this court whether they are actually seeking to have Plaintiff's requests for statutory damages and attorneys' fees struck, or whether they merely meant the relevant footnotes to be interesting asides. *See Okinawa Dugong v. Gates*, 543 F. Supp. 2d 1082, 1090 n.2 (N.D. Cal. 2008) ("[B]urying in a footnote an argument … does not give the opposing party fair and sufficient notice[.]"). For this reason alone, this court should ignore Defendants' concealed remedies arguments.

Defendants' objections to the remedies sought by Plaintiff are not only procedurally, but also substantively, unavailing. Defendants first argue that Plaintiff could never recover statutory damages and attorneys' fees because even if discovery were to prove that someone else had registered the Photograph prior to 2008, "that third party would be the copyright owner," and Plaintiff would thus have no claim. Defs.' Motion at 5 n.3. The intimation that only the copyright registrant could state a claim in this case is plainly mistaken. It is copyright *owners*, not registrants, who have standing to bring infringement actions in federal court. 17 U.S.C. § 501(b). And discovery may well show that Plaintiff is the successor-in-interest to the Photographs' original author and/or registrant, making Plaintiff the copyright owner with every right to sue for its infringement. Moreover, copyright owners are not the only entities entitled to register the copyright in a work of authorship. The Copyright Act indisputably also entitles exclusive licensees to register a work as well. *See* 17 U.S.C. § 408(a) ("[T]he owner of copyright or any exclusive right in the work may obtain registration[.]"); 37 C.F.R. § 202.3(c)(1) ("An application for copyright registration of a work may be submitted by any author or other copyright claimant of a work, or the owner of any exclusive right in a work, or the duly authorized

**OPPOSITION TO DEFENDANTS' PARTIAL MOTION TO DISMISS SECOND AMENDED COMPLAINT**

1    agent of any such author, other claimant, or owner."). In turn, therefore, anyone with a

2    legal or beneficial interest in that copyright can then use that registration as a basis for both

3    standing and for seeking statutory damages and attorneys' fees. *E.g.*, *Huthwaite, Inc. v.*

4    *Sunrise Assisted Living, Inc.*, 261 F. Supp. 2d 502, 510 (E.D. Va. 2003); 3 Nimmer on

5    Copyright, § 12.02[B] ("[T]he plaintiff in court obviously need not be the same party who

6    initially registered the work.").

7         Merely determining that there is no timely registration in the name of the copyright's

8    author does not end the inquiry on registration. So, here, Defendant's sidelong and

9    conclusory assertions that the Photograph's registration was untimely ignore a number of

10   plausible scenarios that would fully entitle Plaintiff to recover statutory damages and

11   attorneys' fees. Ms. Baldwin, as the Photograph's owner, had the right of first publication

12   over the Photograph as well as the right to register it with the Copyright Office (which she

13   eventually did). But anyone to whom she exclusively licensed the Photograph during her

14   period of ownership would also have had the right to register the work—and well may

15   have. If that were the case, Ms. Baldwin would be able to benefit from the registration that

16   her exclusive licensee made of the Photograph. Whether such registration was ever made is

17   a question that awaits—and fully warrants—discovery.

18        Defendants also point out that if a pattern of infringing conduct begins prior to the

19   effective date of registration, statutory damages and attorneys' fees are not available even if

20   the infringing conduct continues after the registration issues. Defs.' Motion at 5 n.3. While

21   this assertion is true as a very general proposition, ***it is by no means always the case***. The

22   Ninth Circuit has indicated that the "pattern of infringing conduct" test does not bar

23   recovery of statutory damages or attorneys' fees so long as there is a "legally significant

24   difference" between the infringer's pre-registration and post-registration infringing

25   conduct. *Derek Andrew, Inc. v. Poof Apparel Corp.*, 528 F.3d 696, 701 (9th Cir. 2008).

26   Here, discovery may reveal any number of "legally significant differences" between the

27   pre- and post-registration infringement. For example, Defendants may have begun licensing

28   the Photograph to entirely new and different entities after its registration. This could give

13308.1

**OPPOSITION TO DEFENDANTS' PARTIAL MOTION TO DISMISS SECOND AMENDED
COMPLAINT**

rise to forms of contributory liability that bear significant legal differences from the pre-registration infringing acts. *Cf. Kwan v. Schlein*, 246 F.R.D. 447, 452-53 & n.2 (S.D.N.Y. 2007) (denying defendant's motion to strike statutory damages claim because plaintiff's complaint suggested that a second, post-registration publication of plaintiff's work could bear legally significant differences from the initial, pre-registration publication of same work).

Finally, motions to strike are strongly disfavored, *In re Wal-Mart Stores, Inc.*, 505 F. Supp. 2d 609, 614 (N.D. Cal. 2007) ("Motions to strike are generally not granted unless it is clear that the matter sought to be stricken could have no possible bearing on the subject matter of the litigation. Any doubt concerning the import of the allegations to be stricken weighs in favor of denying the motion to strike[.]"), and due to this liberal standard, courts typically deny motions to strike requests for statutory damages and attorney's fees in copyright cases even where those claims appear "tenuous," *X17, Inc.*, 2008 WL4627865 at *3.

Finally, Defendants claim in a different footnote that Plaintiffs cannot seek attorneys' fees in this case, but this assertion too must fail because it is belied by the Copyright Act's plain language. The statute limits recovery of statutory damages and attorneys' fees to timely registrants, but crucially, this limitation applies only to copyright infringement actions themselves. 17 U.S.C. § 412 (limiting its scope to remedies "provided by sections 504 and 505"—namely, remedies for copyright infringement). The Copyright Act thus fully allows recovery of statutory damages and attorneys' fees—regardless of timely registration—for causes of action whose remedies are not prescribed in sections 504 and 505. And the Copyright Act's provisions allowing recovery of statutory damages and attorneys' fees for falsification of copyright management information appear in section 1203, not in sections 504 or 505. *See id.* §§ 1203(c)(1)(B), 1203(c)(3)(B), 1203(b)(5). Thus even if this court were to conclude that Plaintiff's request for statutory damages and attorneys' fees on its copyright infringement claim were barred because the Photograph

1   lacked timely registration, Plaintiff would still be entitled to statutory damages and

2   attorneys' fees due to its falsification of copyright management information claim.

3   **VI.    AT THE VERY LEAST, IF THIS COURT GRANTS DEFENDANT'S**

4   **PARTIAL MOTION TO DISMISS, LEAVE SHOULD BE GRANTED TO**

5   **ALLOW PLAINTIFF TO AMEND ITS COMPLAINT.**

6   As the foregoing argument makes clear, Plaintiff easily satisfies the liberal pleading

7   requirement that it state plausible claims on which relief can be granted. But if, for some

8   reason, the court concludes that Plaintiff need plead with more facts showing that

9   Defendants infringed Plaintiff's Israeli and United Kingdom copyrights under the laws of

10   those nations, or that it falsified copyright management information in violation of 17

11   U.S.C. § 1202(a), leave should be granted to allow Plaintiff to do so.  Under the Federal

12   Rules of Civil Procedure, leave to amend "shall be freely given when justice so requires."

13   Fed. R. Civ. P. 15(a).  As the Ninth Circuit has cautioned, leave to amend should be denied

14   only if the court determines that "allegation(s) of other facts consistent with the challenged

15   pleading could not possibly cure the deficiency."  *Schreiber Distributing Co. v. Serv-Well*

16   *Furniture Co., Inc.*, 806 F.2d 1393, 1401 (9th Cir. 1986).

17   **VII.   CONCLUSION**

18   For the foregoing reasons, Defendants' Partial Motion to Dismiss should be rejected

19   in its entirety.

20

21   Dated:  May 23, 2014          **ONE LLP**

22                                    By:   <u>/s/ Dave Fagundes</u>

23                                          Dave Fagundes
                                            Attorneys for Plaintiff, Iconic Images, LLC
24

25

26

27

28